UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.      Case No. 8:23-mc-24-KKM-SPF

LEE SEGAL,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

    Before the Court is Plaintiff State Farm Mutual Automobile Insurance Company's Motion for Sanctions (Doc. 31). The Court held a show cause hearing on November 7, 2024. Pursuant to 28 U.S.C. § 636(b)(1)(B), and for the reasons explained below, the undersigned recommends that the Court grant Plaintiff's request for attorney's fees and costs and hold Defendant in contempt of court pursuant to its inherent power and Rule 45(g) of the Federal Rules of Civil Procedure.

    **I.**    **Background**

    The undersigned certifies the following facts: On April 18, 2023, Plaintiff served Defendant with a third-party subpoena (the "Subpoena") (Doc. 1-12) in connection with a civil fraud and RICO action pending in the U.S. District Court for the Eastern District of Michigan. *See State Farm Mutual Automobile Insurance Co. v. Hakki*, Case No. 4:21-cv-11940-SDK-APP (E.D. Mich.). Defendant's counsel, Jill Schuh, accepted service of the Subpoena, but failed to respond to the Subpoena or follow-up correspondence sent by Plaintiff's counsel

on June 8, 2023. Ms. Schuh and Defendant were partners at the law firm Segal & Schuh Law Group, P.L. ("Segal & Schuh") (Doc. 16).

The parties met and conferred on June 29, 2023, and Defendant's counsel agreed to produce responsive documents (Doc. 1-13). After several inquiries from Plaintiff's counsel, Defendant failed to produce documents and stopped responding to Plaintiff's correspondence (Doc. 1-13). As a result, on September 11, 2023, Plaintiff initiated this action and moved to compel Defendant's compliance with the Subpoena (Doc. 1). Plaintiff's certificate of service indicated that it served the Motion on Defendant by U.S. Mail on that date (*Id.*). Later, on September 19, 2023, Plaintiff served the motion on Defendant by personal service (Doc. 11).

On October 2, 2023, after Defendant had failed to appear or respond to Plaintiff's motion, the Court ordered Defendant to respond to Plaintiff's motion on or before October 13, 2023 (Doc. 12). Defendant failed to timely respond to Plaintiff's motion, and the Court entered an order granting Plaintiff's motion and directing Defendant to respond to the Subpoena within 14 days (Doc. 13). Thereafter, Defendant filed a belated response to Plaintiff's motion and requested an abatement of the Court's order (Doc. 16). In the filing, Defendant's counsel represented that Defendant was hospitalized for a serious stroke in January 2022 and has suffered major medical complications since that event. As a result, it was determined that he was unable to practice law and would not return to Segal & Schuh. Meanwhile, Defendant was also suspended from the practice of law for one year. Therefore, Segal & Schuh ceased operations and Ms. Schuh has been in the process of winding down the law firm.[1] Finally, Ms. Schuh represented that Defendant has no access to any files or

---

[1] Plaintiff served a similar subpoena on Segal & Schuh and initiated a separate action to compel compliance with that subpoena. *See State Farm Mutual Automobile Insurance Co. v. Segal & Schuh Law Group, P.L.*, Case No. 8:23-mc-28-JSM-SPF (M.D. Fla.).

2

documents that would enable him to respond to the Subpoena, but Segal & Schuh's forthcoming production should satisfy the requests to Defendant (*Id.*).

The Court held a hearing on Defendant's motion (Doc. 24), and ultimately denied Defendant's request to abate its order (Doc. 25). At the hearing, Ms. Schuh spoke to Defendant's health issues and current involvement with Segal & Schuh. *See* Transcript of Motion Hearing, *State Farm Mutual Automobile Insurance Co. v. Lee Segal*, Case No. 8:23-mc-24-KKM-SPF (M.D. Fla. Dec. 19, 2023). She then requested relief from the order compelling his compliance with the Subpoena for two reasons: (1) his physical inability to comply and (2) his lack of access to Segal & Schuh's files as a suspended attorney (*Id.* at 9). After a discussion on where documents may be located, the following exchange took place:

> THE COURT: All right. Thank you so much. So, to the extent you have these documents that were just discussed, the bank records or any other records, when will you able to produce them by?
>
> MS. SCHUH: For purposes of -- and I don't know which subpoena I'm responding to, his or mine.
>
> THE COURT: Well, we are here –
>
> MS. SCHUH: Right.
>
> THE COURT: -- on the subpoena to Mr. Segal.
>
> MS. SCHUH: Because -- because he doesn't have any of those records. Those records belonged to Segal and Schuh. That's my – that's one of my issues. And if I led anyone to believe that I produced any documents, I apologize. That was not what I thought I was saying. I just said I was putting them together.
>
> THE COURT: Well, he could still produce the documents that are with Segal and Schuh because he's a partner in Segal and Schuh.
>
> MS. SCHUH: Okay. I mean, I'm happy to do that. I just -- you know, you've got two identical subpoenas and I'm gonna be under contempt orders for both of them, so I'm trying to -- you know –
>
> THE COURT: You can produce them for both. That's fine.

(*Id.* at 18). After this exchange, the Court directed Ms. Schuh to "contact Mr. Segal about his personal e-mails to make sure he's reviewed those and any hard copies of anything that he may have elsewhere," and if "we are not able to produce documents then, you know, we will be back and we'll revisit the issue of whether or not the hard drive should be produced and State Farm can look through it[.]" (*Id.* at 19). Finally, the Court stated that it was not going to release Defendant from any compliance, but the issue could be revisited after production (*Id.* at 19–20). The Court's subsequent order directed Defendant to produce documents responsive to the Subpoena on or before January 5, 2024 and directed Ms. Schuh to confer with Defendant regarding the search of his personal emails (Doc. 25).

After the Court entered its Order, Defendant made a small production of fifty-six pages of documents. Plaintiff found Defendant's production deficient because it did not contain certain documents that Defendant has admitted exist, and Defendant refused to identify how he searched for responsive documents or whether any documents were being withheld (*See generally* Doc. 31).[2] As a result, Plaintiff again moved to compel Defendant's compliance with the Subpoena and also requested sanctions—in the form of attorney's fees—for Defendant's violation of this Court's order (*Id.*). As part of the requested relief, Plaintiff sought an order requiring, at Defendant's expense, a forensic investigator to conduct an examination of Defendant's electronic devices and email accounts for documents and communications responsive to the Subpoena (*Id.*). Defendant failed to respond to Plaintiff's motion, and as a

---

[2] Plaintiff stated that it had previously provided search terms for Ms. Schuh to use to identify documents responsive to the Segal & Schuh subpoena (Doc. 31 at 11; Doc. 31-29). Ms. Schuh claimed to have used these search terms for this Subpoena, but Plaintiff questioned the veracity of this assertion as certain communications Plaintiff knows to exist should have been identified as a result of these searches (*Id.*).

4

result, the Court granted Plaintiff's request for a forensic examination (Doc. 34). In doing so, the Court directed the parties to follow the protocol for a forensic examination detailed in the order, including the instruction that the examiner was to "search Defendant's email accounts and devices using the search terms Plaintiff previously provided Defendant." (*Id.* at 4). The parties were ordered to confer on the selection of a forensic examiner within fourteen days. If the parties were unable to agree upon an examiner or if Defendant failed to comply with his obligation to confer, then Plaintiff was directed to file a notice informing the Court of same (*Id.*).

Plaintiff's motion requested sanctions against Defendant in the form of Plaintiff's attorney's fees and costs incurred preparing the motion (Doc. 31). Plaintiff's motion did not identify the basis of its request. "Unlike Rule 37, Rule 45 contains no express provision for attorney's fees or sanctions to a party that has prevailed on a motion to compel compliance with a subpoena…." *Golden Krust Franchising, Inc. v. Clayborne*, No. 8:20-mc-104-T-33SPF, 2020 WL 7260774, at *2 (M.D. Fla. Dec. 10, 2020) (quoting *NLRB v. Midwest Heating & Air Conditioning, Inc.*, 528 F. Supp. 2d 1172, 1181 (D. Kan. 2007)); *see also U.S. ex rel. Am. Builders & Contractors Supply Co., Inc. v. Great Am. Ins. Co.*, No. 3:12-mc-36-J-34TEM, 2012 WL 12910657, at *1 (M.D. Fla. June 26, 2012) ("Because the instant [Rule 45] motion involves a non-party, Rule 37 (which applies only to parties) is not applicable."). As a result, the Court addressed Plaintiff's request for fees under Rule 45(g), which authorizes the Court to "hold in contempt a person, who having been served, fails without adequate excuse to obey [a] subpoena or an order related to it." Fed. R. Civ. P. 45(g). Thus, the Court ordered Defendant to show cause why he should not be found in contempt for failure to follow the Court's order within fourteen days and scheduled a show cause hearing (Doc. 34). The Court deferred

ruling on Plaintiff's request for attorney's fees, explaining that it would resolve that issue in connection with the show cause hearing. Finally, the Court expressly warned Defendant that if he failed to comply with any portion of the order, he risked being found in contempt (*Id.*).

After the Court issued its Order, Plaintiff filed a notice informing the Court that Defendant had been belatedly raising objections to the scope of the subpoena and refused to continue the meet-and-confer process unless Plaintiff agreed to his demands (Doc. 44; Doc. 44-5). For example, Defendant argued that emails and documents he sent through his email account at Segal & Schuh are not in his possession, custody, or control and that Plaintiff should attempt to obtain those documents from the law firm and not Segal directly (*Id.*). As a result, the parties were unable to reach an agreement upon a forensic examiner, and Plaintiff requested that the Court appoint Consilio, a third-party discovery vendor it has worked with in the past (Doc. 44; Doc. 44-7). At the same time, Defendant failed to comply with the Court's directive that he show cause within fourteen days why he should not be found in contempt.

On November 6, 2024—one day before the scheduled show cause hearing and forty-five days after the Court entered the Show Cause Order (Doc. 34)—Defendant filed a Response to Order to Show Cause (Doc. 46) and Ms. Schuh filed a Motion to Withdraw as Attorney (Doc. 45).[3] In the Response, Defendant made various statements about the procedural history of this matter and the propriety of the Subpoena, and stated that Plaintiff has already been provided with all responsive documents in response to the Segal & Schuh

---

[3] Defendant's Response to Order to Show Cause was filed by Attorney Adam Bild, who filed a notice of appearance in this matter on October 17, 2024 (Doc. 43). While Mr. Bild did not file his appearance until this date, Plaintiff represented at the show cause hearing that it has been in communication with Mr. Bild since May 2024.

subpoena (Doc. 46). Defendant argued that any further production would be overly burdensome because he no longer has access to his prior work computer, email accounts, or work files since his hospitalization in January 2022. Defendant then stated that he offered his personal cell phone for review by a forensic examiner of Plaintiff's choice and at Plaintiff's expense, but that Plaintiff refused, arguing that Defendant was obligated to pay for the forensic examination. Finally, Defendant made various assertions regarding Ms. Schuh's need to withdraw from the case as the result of a conflict of interest caused by her representation of Defendant as well as Segal & Schuh Law Group, P.L. (*Id.*).[4]

The Court held a show cause hearing on November 7, 2024 (Docs. 41, 48). At the hearing, Mr. Bild argued that Defendant did not have access to any documents in Segal & Schuh's possession. The Court reminded counsel that this issue came up at the December 2023 hearing, where the Court noted that Defendant had access to these documents as a partner of Segal & Schuh, his counsel also had access to these documents, and that Ms. Schuh could produce these documents in response to both Mr. Segal's subpoena and Segal & Schuh's subpoena, and that Ms. Schuh agreed to do that. Ms. Schuh then explained that she searched Segal & Schuh's emails using the search terms provided by Plaintiff's counsel, and then, as a "courtesy," had a follow-up call with Plaintiff's counsel regarding her search. Then, after she began to "get quizzed on search terms" by Plaintiff's counsel, she ceased extending the courtesy of conferring with Plaintiff's counsel. She also represented that she did not have

---

[4] In her motion to withdraw, Ms. Schuh argued that, "[d]ue to the Plaintiff filing its Motion for Sanctions and the allegations made by Plaintiff against attorney Lee Segal regarding his actions as a partner in our prior law firm, a conflict of interest has arisen that requires my withdrawal from this matter in accordance with R. Regul. Fl. Bar 4-1.16." (Doc. 45 at 2).

7

access to Defendant's personal email accounts,[5] and had no explanation regarding her failure to respond to Plaintiff's motion so that she could clarify the steps taken to respond to the Subpoena. In response, Plaintiff emphasized that it has still, to this day, received no explanation as to how any search was performed.

After hearing from the parties, the Court emphasized that it had already ordered the forensic examination, and that the forensic examination is going forward. The Court ordered Defendant's counsel to provide Plaintiff's counsel with the size of the email accounts to be searched as well as any other information necessary for potential forensic examiners to provide estimates as soon as is practical. The Court then ordered the parties to confer and exchange proposals for potential forensic examiners on or before November 13, 2024. If the parties were able to agree on a forensic examiner, they were to file a notice with the Court on or before November 15, 2024. If they were unable to agree, they were to each file separate proposals on or before November 15, 2024. The Court deferred ruling on the issue of which party would be responsible for paying the costs of the selected forensic examiner. Plaintiff's counsel asked for clarity on whether the forensic examination would include Plaintiff's personal email accounts, and the Court confirmed that both Defendant's personal email accounts and his account with Segal & Schuh would be included in the examination.

Defendant's counsel then asked for clarification on Ms. Schuh's pending motion for withdrawal, and Plaintiff stated that it opposed the motion only because Defendant's counsel is arguing that Mr. Segal does not have access to his Segal & Schuh email account. Because Ms. Schuh does have access to this account, Plaintiff was concerned that allowing her to

---

[5] Ms. Schuh made this representation despite the Court's previous order that she coordinate with Defendant to ensure he has searched his personal emails.

withdraw may create further difficulties in obtaining these documents. The Court then reminded the parties that in December 2023, when the Court ordered Ms. Schuh to produce these documents, he did have control over these documents, and the Court was not going to create a situation where he no longer has control. Mr. Bild then argued that Defendant also did not have control over these documents in December 2023, as he had already ceased practicing law and the firm had already ceased operations at this point. The Court then reminded the parties that Ms. Schuh agreed to produce these documents, and because Ms. Schuh made representations to the Court on this topic, the Court would not permit her to withdraw until these obligations are satisfied. In other words, Ms. Schuh may not withdraw until the forensic evaluation is complete.

After the hearing, the Court memorialized its order that Defendant's counsel provide Plaintiff's counsel with the size of the email accounts to be searched as well as any other information necessary for potential forensic examiners to provide estimates as soon as practicable (Doc. 50). The order also stated that the parties were to confer and exchange proposals for potential forensic examiners on or before November 13, 2024. If the parties were able to agree on a forensic examiner, they were to file a notice with the Court on or before November 15, 2024. If they were unable to agree, they were to each file separate proposals on or before November 15, 2024. The Court deferred ruling on the issue of which party would be responsible for paying the costs of the selected forensic examiner, and whether Defendant should be found in contempt. The Court also ordered Plaintiff to submit the attorney's fees and costs it incurred in bringing its Motion for Sanctions and to Compel on or before November 15, 2024 (*Id.*).

On November 15, 2024, each party filed notices informing the Court that they were unable to agree on the selection of a forensic examiner (Docs. 51, 53). Plaintiff's notice stated that, despite repeated requests, Defendant failed to provide Plaintiff with any information regarding the size of Defendant's email accounts before the parties' meet-and-confer on November 13, 2024 (Doc. 51).[6] As a result, Plaintiff was unable to timely provide Defendant with an estimate from its potential forensic examiner. Moreover, Defendant did not obtain any of his own estimates, stating that his potential vendors needed to know the search terms before providing any estimates. As Plaintiff highlights, however, the Court ordered the forensic examination to be done using the search terms Plaintiff previously provided to Defendant (Doc. 34; *see* Doc. 31-29). And, crucially, if there was any confusion regarding the search terms, Defendant could have responded to Plaintiff's emails requesting this information. Finally, even if Defendant was precluded from obtaining estimates based on legitimate confusion over search terms, this fact should not have impacted Defendant's ability to provide the size of the email accounts to Plaintiff before the meet-and-confer. Defendant ultimately provided the information regarding the size of the email accounts during or immediately after the parties' meet-and-confer on November 13, 2024, and Plaintiff was able to obtain an estimate from its preferred vendor before the November 15 deadline to notify the Court (Doc. 51).

In addition, during the parties' meet-and-confer, Defendant contended that the forensic examination does not apply to his personal email accounts (Doc. 51-4). This is concerning, considering that the Court clarified multiple times during the hearing that both

---

[6] Plaintiff requested this information through emails to Defendant on November 8, November 11, November 12, and November 13 (Doc. 51 at 2; Doc. 51-3). Defendant failed to respond to these inquiries with the requested information.

Defendant's personal and work emails would be included in the examination. Moreover, it is directly contrary to the position Defendant's counsel has taken in the past, namely, that the forensic examination should apply only to personal emails (*See, e.g.*, Doc. 46).

Defendant's notice, while purporting to dispute "the non-responsive content" contained in Plaintiff's notice, did not challenge Plaintiff's characterization of events (Doc. 53). Instead, Defendant challenged Plaintiff's assertion that any objections to search terms were waived and argued that Plaintiff's proposed search terms are significantly broader than appropriate for the Subpoena. Defendant then provided two quotes from vendors using his proposed search terms (Docs. 53-1, 53-2). As Plaintiff raised in its Notice, the Court ordered the forensic examination in this matter to be completed using the search terms Plaintiff previously provided to Defendant (Doc. 34). As a result, Defendant's proposed estimates were not viable options.[7]

Finally, consistent with the Court's order (Doc. 50), Plaintiff timely filed its Notice of Plaintiff's Attorney's Fees and Costs Associated with its Motion for Sanctions (Doc. 52). Plaintiff's Notice provides that its attorney, Adrian Jonak, spent 7.2 hours preparing the 17-page motion, which contained 28 exhibits. Katten Muchin Rosenman LLP, Mr. Jonak's law firm, billed Plaintiff on a blended hourly discounted rate of $510 per hour, which Plaintiff represents to be a significant discount to the prevailing rates charged in the relevant legal market. Based on the foregoing, Plaintiff requests $3,762.00 in attorney's fees and costs.

---

[7] As a result, concurrent with this Report and Recommendation, the undersigned issued an order appointing Consilio, Plaintiff's preferred vendor, as the forensic examiner. The order also provides that Defendant is to be responsible for the costs of the forensic examination.

11

## II. Legal Standard

Federal Rule of Civil Procedure 45 authorizes a court to "hold in contempt a person, who having been served, fails without adequate excuse to obey [a] subpoena or an order related to it." Fed. R. Civ. P. 45(g). "Courts also have the inherent power to enforce compliance with their lawful orders through civil contempt." *Whatley v. World Fuel Servs. Corp.*, No. 20-20993-MC, 2020 WL 4818924, at *2 (S.D. Fla. Aug. 19, 2020) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). "Civil contempt therefore provides courts with a sanction to enforce compliance with [a subpoena or] order of the court or to compensate a complainant for losses or damages sustained by reason of noncompliance." *Whatley*, 2020 WL 4818924, at *2; *see also F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) ("[S]anctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."). These civil contempt sanctions may include, among other things, a coercive daily fine, a compensatory fine, attorney's fees and expenses, and coercive incarceration. *See Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991).

The party seeking civil contempt must show by clear and convincing evidence that the alleged contemnor violated the court's prior orders. *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998). "This requires proving that (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *S.E.C. v. Greenberg*, 105 F. Supp. 3d 1342, 1345 (S.D. Fla. 2015) (quoting *Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007)). "To meet the initial burden for a finding of civil contempt, a moving party need only show that defendant failed

12

to comply with the court's order." *Van De Velde NV v. Felder*, No. 15-24096-CIV, 2017 WL 8895345, at *2 (S.D. Fla. May 25, 2017) (citing *United States v. Rylander*, 460 U.S. 752, 755 (1983)), *report and recommendation adopted*, 2017 WL 8895340 (June 16, 2017). Once this showing is made, the burden then shifts to the alleged contemnor to come forward with evidence showing in detail why a contempt finding should not be found. *Citronelle-Mobile Gathering, Inc.*, 943 F.2d at 1301.

In fact, to avoid contempt, the offending party must show that it either did not violate the court order as alleged or that it was "excused" from complying with such order. *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990). To satisfy this burden, the party must "offer proof beyond the mere assertions of an inability" to comply. *Citronelle-Mobile Gathering, Inc.*, 943 F.2d at 1301 (internal citation omitted). "[I]n this circuit, a party subject to a court's order demonstrates inability to comply only by showing that he has made 'in good faith all reasonable efforts to comply.'" *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988) (quoting *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976)).

### III. Discussion

Plaintiff has shown by clear and convincing evidence that Defendant has failed to comply with multiple lawful and valid orders. First, Defendant failed to comply with the Subpoena. Defendant then failed to timely respond to Plaintiff's motion to compel, despite the Court ordering him to do so. Defendant then failed to comply with the Court's order compelling Defendant to produce documents responsive to the Subpoena. While Defendant did produce some documents, Defendant failed to comply with his discovery obligation to confer in good faith when there were questions about that production. Moreover, Defendant failed to comply with the Court's order that he search his personal emails for responsive

13

documents. Defendant then failed to comply with the Court's order that he and Plaintiff confer on the selection of a forensic examiner and that he show cause within fourteen days why he should not be found in contempt. After the show cause hearing, Defendant failed to comply with the Court's order that he provide Plaintiff with the size of the email accounts as soon as practicable. He also did not comply with the Court's order that he provide a forensic examination estimate to Plaintiff on or before November 13, 2024. Despite this noncompliance, Defendant has failed to offer a sufficient explanation for not complying with the Court's orders. Accordingly, the undersigned certifies the above facts pursuant to 28 U.S.C. § 636(e)(6)(B). Based on these facts, the Court finds that further civil contempt proceedings are warranted.

### IV. Plaintiff's Attorney's Fees and Costs

Having determined that Defendant should be held in contempt of court, the undersigned now turns to what sanctions are appropriate, keeping in mind that this Court has broad discretion in fashioning sanctions, "measured solely by the 'requirements of full remedial relief.'" *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (quoting *Citronelle-Mobile Gathering, Inc.*, 943 F.2d at 1304).

Civil contempt sanctions may be imposed for either or both of two distinct purposes: to coerce compliance with a court order, and to compensate the complainant for actual losses sustained as the result of the contempt. *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400–01 (11th Cir. 1989). If the fine is compensatory, it is payable to the complainant and must be based on proof of actual loss. If the fine is coercive it is paid into the court registry, not to the complainant. In this instance, the court must consider the character and magnitude of the harm threatened by the continued contempt, and the probable effectiveness of any suggested

sanction bringing about the result desired. *Id.* These civil contempt sanctions may include, among other things, a coercive daily fine, a compensatory fine, attorney's fees and expenses, and coercive incarceration. *Citronelle-Mobile Gathering, Inc.*, 943 F.2d at 1304 (citations omitted).

In this case, the undersigned finds that a compensatory sanction, in the form of attorney's fees and costs, is appropriate. As a result, the undersigned recommends that the Court award Plaintiff the attorney's fees and costs it incurred in preparing its Motion for Sanctions. To aid the Court in this calculation, the undersigned recommends that Plaintiff be ordered to file a fee petition within fourteen days after the completion of the forensic evaluation.

**V.    Conclusion**

It is recommended:

(1)    The remaining request for relief in Plaintiff State Farm Mutual Automobile Insurance Company's Motion for Sanctions (Doc. 31) be **GRANTED**.

(2)    Defendant Lee Segal be held in civil contempt of court for his disregard of the authority of this Court.

(3)    Defendant Lee Segal be ordered to pay Plaintiff's reasonable attorney's fees and costs incurred in preparing its Motion for Sanctions.

(4)    Plaintiff be ordered to file a fee petition, pursuant to Local Rule 7.01(c), within fourteen days after the completion of the forensic evaluation.

**IT IS SO REPORTED** at Tampa, Florida on December 17, 2024.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object under § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions in this Report and Recommendation. 11th Cir. R. 3-1.